UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARY HAMLIN,

                Plaintiff,

v.                                                6:13-CV-0857
                                                     (GTS)
CAROLYN COLVIN, Comm'r of Soc. Sec.,

                Defendant.
_____

APPEARANCES:                                   OF COUNSEL:

OFFICE OF PETER W. ANTONOWICZ         PETER W. ANTONOWICZ, ESQ.
  Counsel for Plaintiff
148 West Dominick Street
Rome, NY 13440

U.S. SOCIAL SECURITY ADMIN.              DAVID L. BROWN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Mary Hamlin ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 11, 14.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

At the time of her application, Plaintiff was 52 years old. Plaintiff has completed education through the doctorate level, having graduated from law school. She has most recently worked as an attorney and a fraud investigator. Generally, Plaintiff's alleged disability consists of bipolar disorder, agoraphobia, ulcers, gastroesophageal reflux disease and chronic obstructive pulmonary disease ("COPD"). Her alleged disability onset date is July 1, 2008, and her date last insured is December 31, 2011.

   B.   **Procedural History**

On December 15, 2008, Plaintiff applied for Social Security Disability Insurance and Supplemental Security Income. Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On April 15, 2010, Plaintiff appeared before the ALJ, Edward Pitts. (T. 106-133.) On July 20, 2010, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 136-147.) Thereafter, the Appeals Council granted Plaintiff's request for review, vacated the prior decision and remanded the case to the ALJ for further proceedings. (T. 148-151.)

On May 1, 2012, Plaintiff again appeared at a hearing before the ALJ. (T. 52-98.) On May 8, 2012, the ALJ issued a partially favorable written decision, finding Plaintiff disabled under the Social Security Act beginning November 1, 2011 but not disabled prior to that date. (T. 14-41.) On July 1, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's May 1, 2012 decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

## C. The ALJ's Decision

Generally, in his decision, the ALJ made the following nine findings of fact and conclusions of law. (T. 21-34.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (T. 21.) Second, the ALJ found that Plaintiff's affective disorder, anxiety disorder and COPD were severe impairments but that her laryngitis, ulcers, gastroesophageal reflux disease, tobacco abuse and alcohol abuse were not severe. (*Id*.) Third, the ALJ found that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 22-24.) Fourth, the ALJ found that, prior to November 1, 2011, Plaintiff

> had the [RFC] to perform work at all exertional levels. Due to her respiratory impairment, [Plaintiff] needed to avoid concentrated respiratory irritants. She was limited to unskilled and semiskilled work with a specific vocational preparation of no more than 5 due to her memory problems. [Plaintiff] was limited to no more than occasional multitasking and decision-making. She was able to maintain her attention and concentration for 90% of an eight-hour day. She was able to have frequent contact with coworkers and supervisors, but only occasional in person contact with the general public. She had no limitation for phone contact with others. [Plaintiff] should not have had overall financial management responsibilities but was able to handle money with supervision.

(T. 24.) Fifth, the ALJ found that, beginning on November 1, 2011, Plaintiff has the RFC

> to perform work at all exertional levels. [Plaintiff] should avoid concentrated respiratory irritants. She is limited to unskilled and semiskilled work with a specific vocational preparation of no more than 5 due to her memory problems. [Plaintiff] is limited to more than occasional multitasking and decision-making. She is able to maintain her concentration for 80% of an eight-hour day. She is able to have frequent contact with coworkers and supervisors, but only occasional in person contact with the general public. She has no limitation for phone contact with others. [Plaintiff] should not have overall financial management responsibilities but is able to handle money with supervision. [Plaintiff] would be unable to complete an ordinary workday without interference with psychological symptoms 20% of the time and is likely to miss more than four days of work per month due to her psychological condition.

3

(T. 29.) Sixth, the ALJ found that Plaintiff is unable to perform her past relevant work. (T. 32.) Seventh, the ALJ found that, prior to November 1, 2011, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (T. 32-33.) Eighth, the ALJ found that, beginning November 1, 2011, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 33-34.) Ninth, and finally, the ALJ found that Plaintiff's substance abuse disorder is not a contributing factor material to the determination of disability. (T. 34.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ committed errors of law in determining Plaintiff's RFC because he failed to assign the proper weight to Dr. Parker's opinion and arbitrarily chose November 1, 2011 as Plaintiff's onset date. (Dkt. No. 11 at 13-17 [Pl.'s Mem. of Law].) Second, and finally, Plaintiff argues that the ALJ failed to properly assess her credibility regarding her allegations of disabling pain and symptoms. (*Id*. at 17-19.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues that the ALJ's RFC finding was supported by substantial evidence because Dr. Parker's opinion was inconsistent with other medical evidence in the record and the ALJ properly determined Plaintiff's onset date based on the evidence in the record. (Dkt. No. 14 at 6-11 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly found less than credible Plaintiff's allegations of total dysfunction prior to November 1, 2011, based on the medical evidence of record as well as Plaintiff's activities of daily living, her inconsistent statements regarding those activities and her

receipt of unemployment benefits. (*Id.* at 11-14.) Third, and finally, Defendant argues that the ALJ properly found that work existed in significant numbers in the national economy that Plaintiff could perform prior to November 1, 2011 based on the ALJ's proper RFC determination and the opinion of a vocational expert. (*Id.* at 14.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

5

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education,

> and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Properly Weighed the Opinion of Plaintiff's Treating Physician

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 6-10 [Def.'s Mem. of Law].) The Court would only add the following analysis.

Under the "treating physician's rule," controlling weight is given to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir.2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000). Regulations require ALJs to set forth his or her reasons for the weight assigned to a treating physician's opinion. *See Shaw*, 221 F.3d at 134.

Plaintiff argues that the ALJ failed to assign controlling weight to the opinion of her treating physician, William Parker, M.D., that Plaintiff's impairments caused many extreme and marked limitations in her ability to perform work-related functions for the period July 1, 2008 through November 1, 2011. (T. 725-727.) Defendant counters that the ALJ did not err in failing to assign controlling weight to this opinion because it is inconsistent with other medical opinions of record as well as Dr. Parker's own treatment notes for the relevant period.

Here, the ALJ assigned no weight to Dr. Parker's opinion regarding Plaintiff's limitations prior to November 1, 2011. In doing so, the ALJ acknowledged Dr. Parker's long treatment relationship with Plaintiff as well as his specialty in internal medicine, but noted the lack of support for his opinion in his own treatment notes as well as the opinions of other acceptable medical sources, such as consultative examiner, Kristen Barry, Ph.D. and state agency psychiatric consultant, Zenaida Mata, M.D.

Specifically, as the ALJ noted, Dr. Parker reported that from July 1, 2008 through November 1, 2011, Plaintiff had no ability to use judgment, deal with stress, maintain attention or concentration, understand, remember and carry out complex instructions, maintain personal appearance, behave in an emotionally stable manner and relate predictably in social situations. (T. 30, 725-726.) Dr. Parker further reported that Plaintiff had marked limitations to her ability to follow rules, relate to family and acquaintances, deal with the public, function independently, understand, remember, and carry out detailed, but not complex instructions and demonstrate reliability. (*Id.*) A marked limitation in a particular activity means that Plaintiff is effectively precluded from performing that activity in a meaningful manner consistently throughout an eight-hour period of time on a daily basis. (T. 725.) Also, by letter dated February 26, 2012, Dr. Parker opined that "[a]lthough [Plaintiff] permanently stopped working July 7[,] 2008 she clearly

was disabled before this time. Clearly [Plaintiff] could have been taken out of work long before 2008 however it was her choice to continue to try to work. In my professional opinion [Plaintiff] is 100% disabled due to her mental illness." (T. 834.)

Notably, while Dr. Parker began treating Plaintiff for mental impairments in December 1996, his treatment notes reflect largely benign findings in that regard from July 1, 2008 until November 1, 2011, when he reported marked deterioration of Plaintiff's anxiety and bipolar disorder. (T. 469-544, 764-833.) Dr. Parker noted a deterioration of Plaintiff's bipolar symptoms in June 2006, during the time when Plaintiff was involved in events that led to her indictment on grand larceny charges and the loss of her law license. (T. 487.) Plaintiff next saw Dr. Parker in May 2007, when it was reported that, while her diagnosis was unchanged, she appeared to be stable and was doing better with less stress in her new job. (T. 482.) In December 2007, Plaintiff exhibited worsening depression symptoms and Dr. Parker prescribed Seroquel to stabilize her mood. Two weeks later, Dr. Parker reported that Plaintiff was better and mulch calmer with the new medication. (T. 476-479.) Four months later, in February 2009, Dr. Parker reduced Plaintiff's Seroquel dosage, noting that she was doing better and experiencing less stress. (T. 473.)

Plaintiff next saw Dr. Parker in January 2009, when she presented with worsening depression symptoms. Dr. Parker noted, however, that Plaintiff had not been taking her medication. Dr. Parker referred Plaintiff to a psychiatrist at that time. (T. 469.) In June 2009, Dr. Parker reported a benign examination of Plaintiff with stable medical problems and he noted that Plaintiff "may be even a little bit better despite being stressed." (T. 829.) The next mention of Plaintiff's mental impairments in Dr. Parker's treatment notes appeared in July 2010, when he noted that Plaintiff just saw the psychiatrist the day prior and that psychiatrically she was doing

9

pretty well. (T. 822.) In January 2011, Dr. Parker noted that Plaintiff was stable psychiatrically and that she was alert with a normal mood and affect. (T. 816.) Plaintiff next saw Dr. Parker in May 2011, when she was reported to be stressed with depression. Dr. Parker noted that Plaintiff's psychiatric problems were poorly controlled and that he was prescribing the highest dosages of medication that he will give. Dr. Parker referred Plaintiff to her psychiatrist. (T. 802.) Plaintiff did not see Dr. Parker again until November 1, 2011, when he noted that Plaintiff brought social security disability forms with her and that she had "marked deterioration of her anxiety and bipolar disorder." (T. 764.) Dr. Parker further opined that Plaintiff will not be able to work again "because she has been really totally disabled by the psychiatric disorder for several years now." (*Id.*)

On February 2, 2009, Dr. Barry conducted a psychiatric evaluation of Plaintiff. Dr. Barry reported that Plaintiff was appropriately dressed in a neat and casual fashion and exhibited fair hygiene and grooming and that she was able to maintain appropriate eye contact. (T. 633.) Dr. Barry further noted that Plaintiff was oriented to person, place and time and that her attention and concentration as well as her recent and remote memory skills were intact. (*Id.*) Finally, while Dr. Barry opined that Plaintiff "has difficulty handling stressors[,]" she is "able to follow and understand simple directions and instructions [and] is able to maintain her attention and concentration." (T. 634.)

On March 3, 2009, Dr. Mata completed a mental RFC form after reviewing the medical evidence of record, including Dr. Parker's treatment records and Dr. Barry's examination report. Dr. Mata concluded that Plaintiff is only moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, respond

appropriately to changes in the work setting, and set realistic goals or make plans independently of others. (T. 656-657.) Dr. Mata found that Plaintiff had no limitations in the remaining areas of mental functioning. (*Id.*) Consequently, Dr. Mata opined that Plaintiff's mental RFC supports at least simple task work. (T. 658.)

Accordingly, because Dr. Parker's opinion of Plaintiff's extreme and marked limitations is not supported by his own treatment records and is contradicted by the opinions of other acceptable medical sources, the ALJ did not err in assigning that opinion no weight. Consequently, because the ALJ did not err in assigning no weight to Dr. Parker's opinion regarding Plaintiff's limitations prior to November 1, 2011, remand is not necessary on this basis.

**B.** **Whether the ALJ Properly Calculated Plaintiff's RFC**

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 10-11 [Def.'s Mem. of Law].) The Court would only add the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations ... Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96-8p, 1996 WL 374184, at *2). "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, No. 12-CV-6640, 2013 WL 4647643, at *8

(W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545(a)(3)-(4)). The ALJ must consider all of the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. *See* 20 C.F.R. §§ 404.1545(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other non-medical sources to show how a claimant's impairments may affect his ability to work. *See* 20 C.F.R. § 404.1513(c)(d). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir.1984).

Plaintiff argues that the ALJ's RFC determination was erroneous because his determination that Plaintiff did not become totally disabled until November 1, 2011 was arbitrary and is not based on substantial evidence. Further, Plaintiff argues that the ALJ substituted his own lay opinion for that of a competent treating source. Defendant counters that the evidence clearly shows that Plaintiff's attention and concentration deteriorated after November 1, 2011 and that the ALJ's determination in this regard was based on the opinions of acceptable medical sources.

To be sure, the law allows a determination that a claimant may medically improve or deteriorate from one day to the next. *Cf. Decker v. Astrue*, No. 09-CV-908, 2011 WL 7630363 (N.D.N.Y. Nov. 28, 2011). Here, there is evidence, in addition to Dr. Parker's opinion, that Plaintiff's attention and concentration deteriorated after November 1, 2011. On October 4, 2011, Plaintiff was evaluated by Surendra Johri, M.D., at Upstate Cerebral Palsy Community Health and Behavioral Services Division, who indicated that Plaintiff's concentration, judgment and attention were only fair. (T. 747-749.) Counseling was recommended. Simultaneously Plaintiff

was being treated at the same agency by Certified Alcohol and Substance Abuse Counselor, Nancy DeAngelis.[1] Ms. DeAngelis noted, in a mental RFC statement on November 4, 2011, that, based on her treatment of Plaintiff since April 22, 2011 as well as Dr. Johri's October 4, 2011 evaluation, Plaintiff had no ability to deal with the public, deal with stress, function independently, maintain attention or concentration, understand, remember and carry out complex instructions, understand, remember, and carry out detailed, but not complex instructions, behave in an emotionally stable manner and relate predictably in social situations. (T. 730-731.) In addition, Ms. DeAngelis opined that Plaintiff has marked limitations to her ability to follow rules, use judgment, relate to authority figures, understand, remember, and carry out simple instructions, maintain personal appearance, and demonstrate reliability. (*Id.*)

Further, David Stang, Psy.D., who evaluated Plaintiff on April 7, 2012, opined that Plaintiff had no ability to deal with the public or deal with stress, and that Plaintiff has marked limitations to her ability to relate to family and acquaintances, function independently, maintain attention or concentration, understand, remember and carry out complex instructions, understand, remember, and carry out detailed, but not complex instructions, maintain personal

---

[1] A Certified Alcohol and Substance Abuse Counselor ("CASAC") is not an acceptable medical source under 20 C.F.R. § 416.913(a), but could be considered as an "other source" under 20 C.F.R. § 416.913(d). *Kunkel v. Comm'r of Soc. Sec.*, No. 12-CV-6478, 2013 WL 4495008, at *11 (W.D.N.Y. Aug. 20, 2013). The opinion of an "other source" may properly be considered regarding the severity of a claimant's impairment and how it affects the claimant's ability to work. *See Luffman v. Comm'r of Soc. Sec.*, No. 12-CV-317, 2013 WL 1386639, at *7 (N.D.N.Y. Mar. 14, 2013) (citing 20 C.F.R. § 404.1513(a)). Opinions from medical sources that are not considered acceptable medical sources, such as a CASAC, are "important and should be evaluated on key issues such as impairment severity and functional effects." *Anderson v. Astrue*, No. 07-CV-4969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009). The Regulations provide that the Secretary will consider "evidence from other sources to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." *See* 20 C.F.R. § 404.1513(e). In weighing the opinions of "other sources" the ALJ must use the same factors for the evaluation of the opinions from "acceptable medical sources" enumerated in 20 C.F.R. § 404.1527(c). *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010).

appearance, behave in an emotionally stable manner and relate predictably in social situations. (T. 849-850.) In addition, Dr. Stang opined that Plaintiff has moderate limitations to use judgment and demonstrate reliability. (*Id.*)

Therefore, the ALJ's determination that Plaintiff's RFC reflected a change in her ability to maintain attention and concentration and to complete an ordinary workday without interference with psychological symptoms, rendering her disabled beginning November 1, 2011, is supported by substantial evidence. Accordingly, remand is not necessary on this basis.

### C. Whether the ALJ Properly Assessed Plaintiff's Subjective Allegations

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 11-14 [Def.'s Mem. of Law].) The Court would only add the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15, 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other

symptoms alleged." *Id.*, at 271. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.*

Here, the ALJ considered Plaintiff's reports of functional limitations and daily activities and found that her "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible prior to November 1, 2011." (T. 25.) The ALJ went on to explain that Plaintiff failed to produce appropriate, probative evidence to substantiate her subjective allegations of disabling symptoms prior to November 1, 2011, and therefore, the ALJ is unable to give controlling weight to Plaintiff's complaints. (*Id.*)

Plaintiff argues that the ALJ failed to properly weigh the report of her treating source with regard to Plaintiff's symptoms. Further, Plaintiff points out that none of the treating sources raised any question about the accuracy of Plaintiff's complaints nor was there any suggestion that Plaintiff was exaggerating her symptoms.

15

To the extent Plaintiff argues that a determination of her credibility is the province of her treating sources, she is mistaken. It is the ALJ who has the sole discretion to evaluate Plaintiff's credibility. *See Montaldo v. Astrue*, 2012 WL 893186, at *17. Here, the ALJ properly noted that Plaintiff's reported activities of daily living belie her allegations of severe disabling symptoms. Further, as indicated in Point IV.A. of this Decision and Order, the ALJ appropriately weighed the objective medical evidence, which does not support Plaintiff's allegations. Moreover, and finally, the ALJ properly considered that Plaintiff's receipt of unemployment benefits between July 1, 2008 and November 1, 2011 rendered incredible her assertion of totally disabling symptoms during that time period.

Therefore, remand not necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **<u>GRANTED</u>**; and it is further

**ORDERED** that the Complaint is **<u>DISMISSED</u>** in its entirety with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

Dated: September 18, 2014
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge